HERBERT FERRELL, JR.,

     Petitioner,

v.

                                   CASE NO: 8:08-CV-900-T-30EAJ
                                   Crim. Case No: 8:05-CR-530-T-30EAJ

UNITED STATES OF AMERICA,

     Respondent.

_____/

# ORDER

     THIS CAUSE comes before the Court upon the Eleventh Circuit's Mandate, which remanded Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. §2255 as to one specific claim (CV Dkt. 16), Petitioner's Supplemental Brief (CV Dkt. 18), and the Government's Response (CV Dkt. 28).

## BACKGROUND

     Petitioner, HERBERT FERRELL, JR. (hereinafter referred to as "Ferrell" or "Petitioner") was found guilty at jury trial of conspiracy to possess with intent to distribute and distribution of 1,000 or more marijuana plants, in violation of 21 U.S.C. § 846 and 841(b)(1)(A), on August 23, 2006. Sentencing was held on January 30, 2007. Judgment (CR Dkt. 556) was entered on January 31, 2007. Petitioner timely filed a Notice of Appeal (CR Dkt. 559) on February 1, 2007, appealing his conviction to the Eleventh Circuit Court of Appeals. The Eleventh Circuit Court of Appeals affirmed the Judgment of this Court on

October 5, 2007, without prejudice to the Petitioner's right to raise his ineffective assistance of counsel claim on collateral review. The Petitioner timely filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. 1/CR Dkt. 672) on May 12, 2008.

On September 26, 2008, the Court denied Petitioner's 2255 motion (CV Dkt. 5). Petitioner filed a notice of appeal challenging the denial of his 2255 motion. The Court denied Petitioner's application for a certificate of appealability ("COA") (CV Dkts. 8, 11). Initially, the Eleventh Circuit also denied Petitioner's motion for a COA (CV Dkt. 12). Petitioner then moved the Eleventh Circuit to reconsider his request for a COA, arguing that the Court had ignored his claim that his trial counsel had been ineffective by failing to pay attention to the critical evidence in the case regarding the actual quantity of marijuana plans. The Eleventh Circuit granted Petitioner's motion for reconsideration and granted the COA as to the following issues:

> Whether, in light of Clisby v. Jones, 960 F.2d 925, 936 (11th Cir. 1992) (en banc), the district court was required to address all of the claims raised in Ferrell's motion to vacate his sentence pursuant to 28 U.S.C. § 2255; and
>
> If so, whether the district court failed to address Ferrell's claim that counsel was ineffective with regard to the jury's inquiry regarding the number of plants involved, as well as the jury instructions regarding that evidence?

(CV Dkt. 13).

Subsequently, the Eleventh Circuit remanded Petitioner's 2255 motion with the instruction that the Court address the following claim: "Whether Ferrell received ineffective

assistance of counsel under <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in connection with the district court's response to the jury's inquiry regarding drug quantity." (CV Dkt. 16). On November 25, 2009, Petitioner filed his brief in support of this issue (CV Dkt. 18) and on March 2, 2010, the Government filed its opposition (CV Dkt. 28).

## **DISCUSSION**

On remand, the single issue before the Court is whether Petitioner's counsel was constitutionally ineffective "in connection with the district court's response to the jury's inquiry regarding drug quantity." (CV Dkt. 16).

The Sixth Amendment to the United States Constitution provides the right of the accused to have effective assistance of counsel for his defense. <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970). It is well-established that to prevail on an ineffective assistance claim, the accused must first show that his "counsel's performance was deficient" and then must show that the deficient performance prejudiced the outcome of his case. <u>Strickland v.Washington</u>, 466 U.S. 668, 687 (1984). In order to demonstrate that the attorney's performance was deficient, Petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687. Second, Petitioner must prove prejudice, in that he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u>, 466 U.S. at 694. "A

reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 466 U.S. at 694.

Petitioner must prove both prongs of Strickland. Therefore, if Petitioner fails to establish either deficient performance or prejudice, the court need not address the other prong. Id., 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,….that course should be followed.");Sims v. Singletary, 155 F.3d 1297, 1305 (11th Cir. 1998). Petitioner has failed to establish that his counsel's performance was deficient and, even if counsel's performance was deficient, Petitioner has failed to establish that he suffered sufficient prejudice.

Specifically, during deliberations, the jury submitted a note, stating:

Hear audio for -

(1) How many plants & harvests were intended @ Box Drive.

(2) How many plants and harvests were intended @ Crooked Lane.

(CR Dkt. 334; Court Ex. 1). The Court then had the following discussion with counsel:

THE COURT: How would you like me to respond to this?

MR. PORCELLI: Well, I would like you to respond probably different than you should respond, but I think you can't. Ultimately, I think that's the question that has to be posed back to them. That is an issue to be made – I mean, as – you can either reiterate your previous instructions, but they first need to make a determination whether he was in the conspiracy, and then the second determination needs to be made as to the quantity of marijuana plants involved.

THE COURT: Well, I don't think that's the question. I don't think the question is how many plants and harvests were intended. I think the question is they would like to hear the audio for how many plants and harvests were intended. So, I don't know if they're asking us to pinpoint where in the audio that's covered or if they're asking us to give them a lesson on the computer and let them listen to the audio or what.

MR. PORCELLI: I would certainly like to pinpoint things to them, but I feel that would be inappropriate for them. I think that would be highlighting certain evidence as opposed to others. That - - I think we have to let them make that decision if they want to review all the audiotapes and make those decisions.

THE COURT: So, your proposal is what?

MR. PORCELLI: I think you need to clarify if that's what they're asking, if they're asking to listen to the audio; and, if so, we can just tell them, "We cannot highlight certain portions of the audio," that they can review it for themselves to make their determination.

THE COURT: What do you say, Mr. Bodiford [Petitioner's trial counsel]?

MR. BODIFORD: Well, I do completely agree that we can't just pick and choose what to give them. We don't want to retry this thing and hand them a computer to let them listen back there and - - I guess if that's what they want to do, they'd be entitled. I think we can inquire of them whether they have any more specific recollections of conversations they would like; and if they can, as a group, determine which ones they would like to hear, I don't see why they wouldn't be entitled to hear that.

I mean, the tapes are in evidence. They can review whatever evidence they want, Judge. I'm inclined to go along with what Mr. Porcelli said, which is - - I - - I agree with you. They want to hear tapes. Unless they can be more specific, I don't want things pinpointed, and I really don't want to hand them the computer and say, "Listen." So, maybe we can use this as an opportunity to see if they have any more particular conversations that they want to hear. But I'd ask the Court to inquire of them that way.

THE COURT: All right. I suggest that we call them back in, and I will explain to them that it's up to them to determine what the agreement was concerning how many plants and harvests were intended and that if they want to listen to the audio, we

cannot pinpoint for them certain portions of the audio because that would highlight it - - it would highlight certain portions, which we're not allowed to do; but we can give them a lesson on how to operate the computer, and if they want to listen to the audiotapes, they can listen to them themselves, and we'll vacate this room and let them listen to their heart's content. Otherwise, they can rely on their collective memories and decide the issues.
How does that sound?

MR. PORCELLI: I think that's most appropriate, Your Honor.

MR. BODIFORD: I think it's probably the most appropriate thing to do, Your Honor.

THE COURT: All right. Bring in the jury, please.

------------------------------------------------------------------------
(The jury entered the courtroom and was seated.)

THE COURT: I've brought you back in to try to answer your question as best I can verbally, which I thought would be better than writing something.

It is up to you to determine what the agreement was concerning how many plants and harvests were intended for any location. If your question is about the audio and that you want to listen to the audio, the audiotapes are in evidence, and you can listen to them as much as you'd like. Our problem is I cannot pinpoint for you or have the parties pinpoint for you which portions of the tapes they say apply to any particular issue, because that would be highlighting certain portions of the evidence, and I can't highlight some portions and not others.

What I can do is, if you want to listen to the audiotapes, I can have Mr. Porcelli give you instructions or any person that you want out of your jury instructions on how to operate the computer to listen to the tapes. We can then vacate this room, and this - - this courtroom can be your jury deliberation room while you're listening to tapes, and you can listen to them as much as you want to listen to them, but you have to find the portions that you want to listen to.

Or if you would rather not do that - - that's your decision - - you can rely on your collective memories and go back and decide the issue based on your collective memories.

So, do you want to discuss among yourselves how you would like to proceed; and if you'd like to listen to the tapes, I'll have Mr. Porcelli tell you how to do that. If you would do that among yourselves here, or you can go back in the jury room and decide how to proceed and then come back and tell us or tell Frank.

(CR Dkt. 618 at 3-7). The jury subsequently reported that it did not wish to listen to the audiotape. Id. at 8.

The transcript cited herein makes it clear that Petitioner's trial counsel was not ineffective for failing to object to the Court's response and instructions to the jury regarding their questions or failing to add anything additional regarding how to handle the jury's questions. The Court's statement to the jury to rely on their collective memory was a correct statement of law and any objection to the Court's statement would have lacked merit. See U.S. v. Rodriguez, 457 F.3d 109, 120 (1st Cir. 2006). The transcript also reflects that Petitioner's counsel was not deficient in any way during his discussion with the Court and opposing counsel about the best way to instruct the jury regarding their questions.

Even assuming, *arguendo*, that Petitioner's counsel was ineffective, Petitioner cannot demonstrate prejudice, because he cannot show that the jury would have reached a different verdict as to drug quantity if counsel would have objected to the Court's instruction. In arguing prejudice, Petitioner assumes that the jury relied solely on the indictment to determine the drug amount which is unsupported in the record. Petitioner also argues that his counsel should have suggested that the jury be instructed that the indictment was not admissible evidence, however, the Court did specifically instruct the jury that "[t]he indictment or formal charge against the Defendant is not evidence of guilt." (CR Dkt. 335

at 2).  Lastly, the jury decided that it did not need to listen to the audiotape, which negates

Petitioner's argument that the jury could not recall the admissible evidence regarding the

quantity of plants.

It is therefore ORDERED AND ADJUDGED that:

1.      Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28

U.S.C. §2255 (CV Dkt. #1) is DENIED.

2.      The Clerk is to enter judgment for Respondent, United States of America,

terminate any pending motions, and close this case.

CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA
PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of

appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to

appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court

must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue...only if the

applicant has made a substantial showing of the denial of a constitutional right." Id. at §

2253(c)(2).  To make such a showing, Petitioner "must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong,"

Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484

(2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed

further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle,

463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on March 19, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Even\2008\08-cv-900.deny 2255aftermandate.frm